**Andrew Chan Kim (SBN 315331)**
2603 Barclay Way
Belmont, CA 94002
T: (650) 339-2005
chan.a.kim@gmail.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARKETRI CYRUS,<br><br>        Plaintiff,<br><br>    vs.<br><br>CITY OF HAYWARD, HPD Chief MARK KOLLER, HPD Sergeant GREGORY VELASQUEZ, Officer CHRISTOPHER SUOZZO, Officer CHRISTOPHER HUMPERT, Officer TOMMIE CLAYTON, Officer LEON LIMON, Officer AARON SUOZZO, Officer NATHAN SCINTO, Officer AUREL AGUSTIN, HPD Employee JANICE MCKEE, HPD Employee JUAN CASILLAS, and DOES 1-50, Jointly and Severally,<br><br>        Defendant(s) | Case No.:<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL**<br><br>1. 42 U.S.C. § 1983 – Civil Rights Violations<br>2. 42 U.S.C. § 1983 – *Monell* and Supervisory Liability<br>3. 42 U.S.C. § 1983 – Conspiracy<br>4. 42 U.S.C. § 1983 – *Devereaux* Liability<br>5. 42 U.S.C. § 1983 – Malicious Prosecution<br>6. California Constitution, Article I, § 13<br>7. California Civil Code § 52.1(b) – State Civil Rights Violations<br>8. Assault and Battery<br>9. False Arrest and False Imprisonment<br>10. Negligence<br>11. Intentional Infliction of Emotional Distress |

Plaintiff, by and through his attorney, for his Complaint against Defendants, states the following:

## INTRODUCTION

1.    On July 28, 2017 at around 3am, Plaintiff Marketri Cyrus ("Cyrus") – an unarmed 25-year old black man – was walking home while speaking to his mother on the phone. Suddenly, at least three Hayward Police Department ("HPD") vehicles pulled up next to him and

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

activated their lights. At least five HPD officers, Sergeant Gregory Velasquez ("Velasquez"), Officers Christopher Suozzo ("C. Suozzo"), Christopher Humpert ("Humpert"), Aaron Suozzo ("A. Suozzo"), and Nathan Scinto ("Scinto") emerged from the vehicles and seized Cyrus without probable cause, in violation of his right to be free from unreasonable search and seizure. The officers surrounded Cyrus and loudly demanded that he sit down on the curb and put his phone down. When Cyrus asserted his First Amendment right to ask if he was being detained and to ascertain the reason, the officers immediately employed excessive force by tackling Cyrus and handcuffing his hands behind his back. As a result of the officers' unconstitutional conduct, Cyrus sustained numerous injuries, including: (1) a concussion; (2) a one-inch abrasion above his right eye; (3) a one-inch abrasion on his left wrist; (4) swelling; (5) injury to his knees; and (6) numerous other scratches, permanent scars, and pain to his body. The officers' unconstitutional seizure and injuries to Cyrus were entirely avoidable because less than an hour before, Cyrus was shopping at a 7-Eleven when two HPD officers, Officers Tommie Clayton ("Clayton") and Aurel Agustin ("Agustin") intimidated and harassed him after they wrongly associated him with "suspicious" individuals. Taking Officer Clayton's narrative at face value – that "[b]ased on the actions of the group and time of day, [he] formed the opinion [that Clayton] may have been planning to rob the store" – a reasonable officer would have, at the very least, conducted an investigatory stop of Clayton and discovered, among other things, that Cyrus was unarmed and not associated with the "suspicious" individuals. Officers Clayton and Agustin, however, wrongfully, deliberately indifferently, negligently, and/or as a result of HPD's failure to train, did not conduct an investigatory stop of Cyrus. Instead, they followed Cyrus throughout the store and continued to follow him after he exited because he did not *voluntarily* consent to providing his name, information, or *voluntarily* consent to a search of his person. Moments after Cyrus left 7-Eleven, HPD claims that an informant reported that 2-3 black men between the ages of 18-28 – conveniently matching Cyrus' description – were talking about committing a future robbery. Officers Clayton and Leon Limon ("Limon") did not locate Cyrus because he had already started walking home – while doing so, he called his mother to discuss the alarming conduct by HPD.

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

Predictably, the police found no evidence supporting the alleged tip: Cyrus had neither committed a robbery nor intended to do so, on that night or any other. Nonetheless, Cyrus was booked into Hayward jail and maliciously charged with two deliberately fabricated counts of resisting arrest, both of which were dismissed on or about October 11, 2017.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because it is being brought to obtain compensatory and punitive damages for the deprivations, under color of state law, of the rights of citizens of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. This action is brought pursuant to the First, Fourth, and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California.

3.      Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law.

4.      Venue is proper, pursuant to 28 U.S.C. § 1391(b)(1)-(2), because the City of Hayward Defendants reside in this judicial district, and the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

**PARTIES AND PROCEDURE**

5.      Plaintiff Marketri Cyrus ("Cyrus") is a citizen of the United States and a competent adult.

6.      Defendant City of Hayward ("Hayward") is a municipal corporation, duly organized and existing under the laws of the State of California, and is the employer of the individual Hayward defendants, as well as certain, to-be-identified Doe Defendants. Under its authority, Hayward operates the HPD. At all material times herein, Hayward was responsible for supervising, enacting, and enforcing the HPD's conduct, policies, and practices, was responsible for the absence of needed policies and practices, and was responsible for the hiring, retention, supervision, and training of employees and agents of the HPD including such employees as Defendants, Chief Mark Koller ("Koller"), Sergeant Velasquez, Officers C. Suozzo, Humpert,

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

Clayton, Limon, A. Suozzo, Scinto, Agustin, HPD Employee Janice Mckee ("Mckee"), Juan Casillas ("Casillas"), and the to-be-identified Hayward employees – Does 1-50.

7.    At all material times herein, Defendants Koller, Velasquez, C. Suozzo, Humpert, Clayton, Limon, A. Suozzo, Scinto, Agustin, Mckee, Casillas, and the to-be-identified Hayward employees Does 1-50, in doing the acts or omissions hereinafter described, acted within the course and scope of their employment with Defendant Hayward, by virtue of their employment with the HPD, and acted under color of state law. Defendants Koller, Velasquez, C. Suozzo, Humpert, Clayton, Limon, A. Suozzo, Scinto, Agustin, Mckee, Casillas, and the to-be-identified Hayward employees Does 1-50 are sued in their individual capacities, including, where applicable, in their capacities as supervisors based on supervisory liability. At all material times, these individual Defendants held titles and participated generally as follows in this matter:

a.  Defendant Koller, at all relevant times mentioned herein, was employed by Defendant Hayward as the Chief of Police, and was acting within the course and scope of that employment at such times. He is being sued in his individual and official capacity as the HPD Chief of Police. At all material times, Chief Koller was the final policy making official for the HPD, ultimately responsible for all policies, procedures, supervision, and training of the HPD.

b.  Defendant Velasquez, at all relevant times mentioned herein, was employed by Defendant Hayward as Police Sergeant, and was acting within the course and scope of that employment at such times. He is being sued in his individual and official capacity as the HPD Sergeant. At all material times, Sergeant Velasquez was a supervisor of HPD Officers, ultimately responsible for enforcing policies, procedures, supervision, and training of the HPD.

c.  Defendants C. Suozzo, Humpert, Clayton, Limon, A. Suozzo, Scinto, and Agustin, at all relevant times mentioned herein, was employed by Defendant Hayward as a Police Officers, and were acting within the course and scope of that employment at such times. They are being sued in their individual and official

capacity as Police Officers. Upon information and belief, Defendant Velasquez supervised them, and was ultimately responsible for enforcing policies, procedures, supervision, and their training.

d. Defendants Mckee and Casillas, at all relevant times mentioned herein, were employed by Defendant Hayward as Call Center Employees, and were acting within the course and scope of that employment at such times. They are being sued in their individual capacities.

8. The Defendants named above, including the Doe Defendants, are sued in their individual capacities, including, where applicable, in their supervisory capacity as supervisors.

9. The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as Does 1-50 are unknown to Plaintiff, who therefore sues said Defendants by said fictitious names. Plaintiff will amend this Complaint to show said Defendants' true names and capacities when the same have been ascertained. Plaintiff is informed, believes, and thereon alleges that all Defendants sued herein as Does are in some manner responsible for the acts, omissions, and injuries alleged herein.

10. Plaintiff alleges, on information and belief, that each of the Defendants sued herein was wrongfully, deliberately indifferently, negligently, and/or otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiff. Further, certain Doe Defendants were at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including both the individually named and Doe Defendants.

11. Plaintiff is informed, believes, and thereon alleges that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of that relationship. Plaintiff is further informed, believes, and thereon alleges that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

alleged herein, except as may hereinafter be otherwise, specifically alleged. At all material times, each Defendant was an integral participant, jointly and fundamentally engaged in constitutionally violative, unlawful, and/or tortious activity, resulting in the deprivation of Plaintiff's constitutional rights and other actionable harm.

12.     The acts and omissions of all Hayward Defendants were at all material times pursuant to the actual customs, policies, practices, and/or procedures of Hayward and/or the HPD.

13.     At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

14.     Plaintiff presented a proper and timely tort claim to Hayward pursuant to Government Code § 910 *et seq.*, and this action, as it relates to the state law claims asserted against Hayward, was thereafter timely filed within the applicable statutes of limitation.

15.     This Complaint may be pleaded in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

**GENERAL ALLEGATIONS**

16.     Cyrus entered a 7-Eleven located at 375 W. Tennyson Road, Hayward, CA 94544 shortly after 2am on July 28, 2017 to purchase snacks on his way home. Cyrus' friend, Monte Lee ("Lee"), saw Cyrus and also entered into the 7-Eleven to say hello. The two young black men were talking and shopping for snacks in the convenience store. Lee knew and was an acquaintance of the 7-Eleven store clerk, Virk, who was working at the time of the incident. Upon information and belief, Officers Clayton and Agustin were watching Cyrus and Lee from a vehicle parked across the street when the two young men entered the convenience store.

17.     According to Officer Clayton's deliberately fabricated police report, at around the same time, Officer Clayton observed a man outside the 7-Eleven store who matched multiple descriptions of a robbery suspect in the area. The man was later identified as Gerrod Jones ("Jones"). Officer Clayton thought Jones looked suspicious "because he was wearing all black

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

and was wearing a backpack."[1] Officer Clayton notes that Cyrus and Lee, who were inside the 7-Eleven store, also looked suspicious because they "were wearing backpacks and standing near the cash register." It appears that Officer Clayton entered the store and made a purchase before exiting. Upon exiting, Officer Clayton contends he observed a fourth male, later identified as Jeremiah Fields ("Fields") looking suspicious because "he also was wearing a backpack" and "clearly waiting in a poorly lit area on the side of the business."[2] At some point, Officer Clayton initiated an investigatory stop of Jones. Officer Clayton's report purposefully omits the result of that stop and/or Officer Clayton neglected to write up the result of that stop. He includes, however, that he observed Fields "walk away from the business" and saw "another subject was standing across the street." Cyrus and Lee were not associated with and did not know Jones, Fields, or any other individual during this incident with the exception of Virk, the store clerk.

18.    At some point thereafter, Officers Clayton and Agustin entered the store and approached Cyrus and Lee. Officer Clayton, without reasonable suspicion or probable cause, requested the two young men provide him with their names and identification. Officer Clayton's request was voluntary. In fact, Officer Clayton admits that the encounter was a "…consensual encounter, Cyrus' movement [sic] were not hindered and he was allowed to leave the area," despite alluding to having reasonable suspicion to conduct an investigatory stop in his report.[3]

---

[1] Officer Clayton's report omits Jones' race. Upon information and belief, Jones is black.

[2] Officer Clayton's report omits Fields' race. Upon information and belief, Fields is black.

[3] In his police report, Officer Clayton writes, "[b]ased on the actions of the group and time of day, I formed the opinion these individuals may have been planning to rob the store. Moments after these subjects were contacted and allowed to walk away, the following call for service was broadcasted a short distance away." The call Officer Clayton describes would be reporting party calling to report 2-3 black men talking about committing a robbery. As aforementioned, Officers Clayton and Agustin wrongfully, deliberately indifferently, negligently, and/or as a result of HPD's failure to train, did not conduct a mandatory investigatory stop of Cyrus.

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

Cyrus respectfully declined the officer's request. Lee complied. Officers Clayton and Agustin then conducted a pat-down search of Lee, searched his backpack, ran a wants and warrants check, and documented Lee's information. Officers Clayton and Agustin then followed Cyrus throughout the store in an intimidating manner and harassed Cyrus by repeating their requests for Cyrus' name and identification and asking to search his backpack. Cyrus asked if he was being detained, and the officers responded no. Officer Agustin started mocking Cyrus, told Cyrus that he could take a photo of his name and badge number because he was filming Cyrus on his body camera anyway, and became unnecessarily combative and aggressive, attempting to provoke Cyrus. Cyrus felt uncomfortable and quickly made his purchases and exited the store with Lee. Upon information and belief, Officers Clayton and Agustin wrongfully, deliberately indifferently, negligently, and/or otherwise failed to activate and/or correctly operate their body cameras pursuant to HPD policy when they engaged Cyrus and Lee inside 7-Eleven and stopped Jones.

19.     On foot, Cyrus and Lee headed west on W. Tennyson Road. The two young men noticed Officer Clayton was wrongfully, deliberately indifferently, negligently, and/or otherwise following them in his vehicle and that more patrol vehicles began driving up and down W. Tennyson Road as they were walking. The two young men, feeling extremely uncomfortable at this point, decided to sit and wait on a bench off the main street and inside an apartment complex at 27796 Vasona Court until the officers stopped following them. The apartment complex is approximately .3 miles and a 6-minute walk from the 7-Eleven.

20.     According to Officers C. Suozzo and Clayton's accounts, at approximately 2:45am, reporting party, called HPD to report that he allegedly overheard 2-3 males outside his residence at 27796 Vasona Court talking about committing a future robbery *with a gun*. The radio log narrative of the incident, however, does not mention a gun. Instead, it states that reporting party allegedly overheard 2-3 males talking about committing a future robbery and that moments later, reporting party provided that that the two black males were between the ages of 18 and 28, one with a yellow or white basketball cap and the other with dreads. Upon

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

information and belief, Mckee and/or Casillas wrongfully, deliberately indifferently, negligently, and/or otherwise informed the dispatched officers that the 2-3 males were heard talking about committing a robbery *with a gun*. Alternatively, Officers C. Suozzo and Clayton deliberately fabricated their police reports to state that reporting party overheard 2-3 males talking about committing a robbery *with a gun*.

21. At approximately 2:50am, just five minutes after reporting party called HPD, Officers Clayton and Limon entered the apartment complex. Cyrus had already exited the apartment complex and was walking home. Officers Clayton and Limon found and handcuffed Lee. As Officers Clayton and Agustin had done shortly before, Officers Clayton and Limon searched Lee's backpack a second time, conducted a pat-down search of his person, questioned him, and searched the surrounding premises. The officers found no weapons. Officer Clayton asked Lee if Cyrus had a gun in his backpack and Lee answered no.  Officer Clayton is recorded asking, "did our informant in this actually see the BMs talking about a robbery?" Moments later, Officer Clayton is recorded talking to someone on his iPhone saying, "RP actually heard but did not see," despite the fact that reporting party provided HPD with a physical description of the two men he allegedly overheard, even going so far as to describe the hat of one man and the hairstyle of the other. Incredibly, Officers Clayton and Limon wrongfully, deliberately indifferently, negligently, and/or otherwise never interviewed and/or made contact with the reporting party, a potentially critical witness, to discuss the armed burglary suspects he reported in the area even though the officers were outside the reporting party's residence within five minutes of his phone call to HPD.

22. At approximately 2:51am, Sergeant Velasquez, Officers C. Suozzo, Humpert, Scinto, and A. Suozzo located Cyrus and activated the emergency lights on their vehicles. Cyrus was on the phone with his mother, asking her to pick him up. Cyrus remained on the phone with her and stopped walking. At least three Doe officers threateningly demanded Cyrus get off the phone and sit down on the curb. Cyrus explained that he was on the phone with his mother and put her on speakerphone. Cyrus, properly asserting his First Amendment right, asked the officers

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

if he was being detained as he did before inside 7-Eleven. The officers did not answer Cyrus and continued to yell at him to sit down and to put his phone down. At all times, Cyrus remained calm, was not combative, and did not attempt to flee. Cyrus made no sudden movements and had his backside leaned against a wall behind him while closely surrounded by at least five officers. Suddenly, in apparent retaliation of Cyrus asserting his First Amendment right to ask if he was being detained, Officers C. Suozzo grabbed Cyrus' right arm and twisted it behind his back while Officer Humpert grabbed Cyrus' left arm, causing him to drop his phone. Simultaneously, Officer Scinto immediately grabbed and shoved Cyrus' head towards the pavement as Officer A. Suozzo, and Sergeant Velasquez forcibly tackled Cyrus onto the pavement face-first causing Cyrus to sustain a concussion and a one-inch abrasion above his right eye. All five officers applied unnecessary and excessive force to Cyrus' back and handcuffed him causing him to sustain an abrasion to his left wrist. The officers also applied an excessive hold on his legs, injuring his knees. The officers' body camera footage shows that during their wrongful arrest of Cyrus, Cyrus never resisted or attempted to flee. At the time Cyrus was handcuffed, the officers lacked probable cause to seize Cyrus.

23.   In committing these actions, the officers wrongfully, deliberately indifferently, negligently, and/or otherwise failed to comport their actions to HPD policy on use of force, which states that "[a]ny police officer may use reasonable force to effect an arrest, *to prevent escape or to overcome resistance*." Furthermore, HPD policy provides factors used to determine the reasonableness of force that include, the immediacy and severity of the threat to officers or others, the number of officers available vs. subjects, the availability of other options and their possible effectiveness, the seriousness of the suspected offense or reason for contact with the individual, whether the person appears to be resisting, attempting to evade arrest by flight or is attacking the officer, the risk and reasonably foreseeable consequences of escape, the apparent need for immediate control of the subject or a prompt resolution of the situation, and whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the officer or others. It should be emphasized that the officers' use of excessive force on

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

Cyrus took place close to 3am, with no others around because of the time and location, and without probable cause that Cyrus had committed a crime or intended to commit a crime. Additionally, the officers outnumbered Cyrus 5-to-1.

24.    While handcuffed and still on his stomach, Cyrus asked the officers what was going on. Doe officer is recorded saying, "all you had to do was cooperate," while Officer Humpert is recorded saying, "act like this, we got to do a whole different level of things. See how we got to act now?" Officer Humpert is recorded telling Cyrus to "have some respect" and to act like a "grown ass man." The officers wrongfully, deliberately indifferently, negligently, and/or otherwise left Cyrus handcuffed behind his back and on his stomach lying on the pavement for at least three minutes. Sometime thereafter, and without probable cause, Sergeant Velasquez informed Cyrus that he was going to jail. When Cyrus asked why, Sergeant Velasquez replied: "For not cooperating. We're trying to do a job. You comply and do what we need to do, you'd probably be going home right now as long as you were not involved in any criminal activity." Officer Humpert told Cyrus to "stop talking back."[4] Cyrus was searched and placed in the back of a police vehicle. Cyrus was not Mirandized until he was booked at least an hour later. Officer C. Suozzo's report states that "[d]uring the investigation there was no obvious evidence located to indicate Cyrus was involved in a robbery." Similarly, Officer Humpert's report states that "[d]uring this investigation, no obvious evidence was obtained that showed Cyrus had committed, or was about to commit a robbery." Rather than releasing Cyrus, Cyrus was arrested and booked in retaliation for asserting his First Amendment right.

25.    As a result of the officers' unconstitutional and violative conduct, including use of excessive force, Cyrus sustained: (1) a concussion; (2) a one-inch abrasion above his right eye; (3) a one-inch abrasion on his left wrist; (4) swelling; (5) injury to his knees; and (6) numerous other scratches, permanent scars, and pain to his body. Cyrus was transported to St. Rose

---

[4] Once the officers stopped recording, Officer Humpert made remarks about how he was from New Jersey and was teaching Cyrus a lesson on respect –confirming Cyrus' arrest was in retaliation for "talking back" to the officers.

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

Hospital for treatment. Cyrus was booked into HPD jail where his injuries were photographed. Thereafter, Cyrus was released on a notice-to-appear citation. Cyrus was charged with two misdemeanors for resisting arrest in violation of Section 148(a)(1) despite video evidence contradicting the charges. Ultimately, the District Attorney of Alameda County subsequently dismissed both charges on or about October 11, 2017.

26.    At all material times and, alternatively, the actions and omissions of each Defendant were intentional, and/or wanton, and/or willful, and/or reckless, and/or callous, and/or malicious, and/or deliberately indifferent to Plaintiff's rights, and/or grossly negligent, and/or negligent.

27.    Plaintiff has incurred economic harms and losses, as well as ongoing stress and anxiety, as a result of Defendants' tortious, wrongful, and constitutionally violative conduct.

28.    As a direct and proximate result of each Defendants' acts and/or omissions as set forth above, Plaintiff sustained the following injuries and damages, past and future, including, but not limited to:

    a.  Economic damages, including, but not limited to, out-of-pocket expenses;

    b.  Emotional distress, fear, anxiety, sleeplessness, humiliation, indignity, and loss of liberty;

    c.  Loss of enjoyment of life and other continued pain and suffering;

    d.  All other legally cognizable special and general damages;

    e.  Violations of state and federal constitutional rights; and

    f.  All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, California Civil Code § 52, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(42 U.S.C. § 1983)**
**PLAINTIFF AGAINST DEFENDANTS HAYWARD, KOLLER, VELASQUEZ, C. SUOZZO, HUMPERT, CLAYTON, LIMON, A. SUOZZO, SCINTO, AGUSTIN, MCKEE, CASILLAS, AND DOES 1-50**

29. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above, as though fully set forth herein.

30. By the actions and omissions described above, the Defendants named above in this cause of action and Does 1-50, acting under the color of state law in their individual capacities, violated 42 U.S.C. § 1983, depriving Plaintiff of the following well-settled constitutional rights that are protected by the Fourth and Fourteenth Amendments to the U.S. Constitution:

    a. The right to be free from unreasonable searches, entry and/or seizures, as secured by the Fourth and Fourteenth Amendments;

    b. The right to be free from the use of unlawful and/or unreasonable force, since any force used to effect and maintain an unlawful arrest is unlawful, as secured by the Fourth and Fourteenth Amendments; and,

    c. The right not to be deprived of liberty or property without due process of law, as secured by the Fourteenth Amendment.

    d. The right to be free from retaliation, as secured by the First Amendment.

31. The listed Defendants' failure to intervene, prevent, or stop the constitutional violations on the part of other, individually named Defendants and/or supervisors, who were in a position to do so when such violations occurred, renders such Defendant(s) liable for these violations.

32. Defendant Koller, Velasquez, C. Suozzo, Humpert, Clayton, Limon, A. Suozzo, Scinto, Agustin, Mckee, Casillas, and the to-be-identified Doe Defendants' deliberately indifferent and constitutionally violative conduct in failing to take appropriate actions foreseeably set into motion the chain of events that proximately caused the subsequent wrongful seizure of Plaintiff, the unlawful searches of Plaintiff, his personal effects, the false imprisonment of Plaintiff, and caused Plaintiff to continuously be subjected to excessive force and liberty deprivations, including wrongful criminal proceedings being brought against him.

33. To the extent the supervisors of Velasquez, C. Suozzo, Humpert, Clayton, Limon, A. Suozzo, Scinto, Agustin, Mkee, and Casillas, and Does 1-50, who supervised them at material and relevant times, knew, should have known, or had reason to know of Defendants'

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

constitutionally violative conduct, as alleged above, or their propensity to engage in such conduct, such supervisors failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise, thus rendering them liable both directly and in their capacity as supervisor. Thus, any supervisors that failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise them are liable directly and in their capacity as a supervisor.

34.     The Defendants named in this cause of action subjected Plaintiff to their wrongful conduct, depriving Plaintiff of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff would be violated by their acts and/or omissions.

35.     As a proximate result of the foregoing wrongful acts, Plaintiff sustained injuries and damages, as set forth above, in ¶ 28. Plaintiff is, therefore, entitled to general and compensatory damages in an amount to be proven at trial.

36.     In committing the acts alleged above, the individually named Defendants and Doe Defendants acted maliciously and/or were guilty of wanton and reckless disregard for the rights, safety, and emotional well-being of Plaintiff, and by reason thereof, Plaintiff is entitled to punitive damages and penalties allowable under 42. U.S.C. § 1983 and other state and federal law against these individual Defendants; no punitive damages are sought directly against Hayward.

37.     Plaintiff is also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

**SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983 – *Monell* and Supervisory Liability)**
**PLAINTIFF AGAINST DEFENDANTS HAYWARD, KOLLER, VELASQUEZ, C. SUOZZO, HUMPERT, CLAYTON, LIMON, A. SUOZZO, SCINTO, AGUSTIN, MCKEE, CASILLAS, AND DOES 1-50**

38.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint, as though fully set forth herein.

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

14

39.     As supervisors, Koller, Velasquez, and Does 1-50 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights of Plaintiff. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Plaintiff's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Plaintiff of rights, OR knew his or her subordinates were engaging in acts likely to deprive Plaintiff of rights and failed to act to prevent his or her subordinates from engaging in such conduct, OR disregarded the consequences of a known or obvious training deficiency that he or she must have known would cause subordinates to violate Plaintiff's rights, and in fact did cause the violation of Plaintiff's rights. (See, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Plaintiff's rights.

40.     Additionally, these supervisors disregarded the consequences of a policy deficiency that they knew or had reason to know would proximately cause the violation of Plaintiff's constitutional rights, which in fact did cause the violation of Plaintiff's rights.

41.     Plaintiff alleges, upon information and belief, that the unconstitutional actions and/or omissions of Velasquez, C. Suozzo, Humpert, Clayton, Limon, A. Suozzo, Scinto, Agustin, Mckee, Casillas, Doe Defendants herein were pursuant to the following customs, policies, practices, and/or procedures of Hayward and/or HPD, or stated in the alternative, which were directed, encouraged, allowed and/or ratified by policy making officials for Hayward and/or HPD including Does 1-50:

   a. Failing to enact and/or maintain and/or execute policies and procedures and/or failing to train employees on use of threats, use of force, use of excessive force;

   b. Failing to enact and/or maintain and/or execute policies and procedures and/or failing to train employees on the standards of reasonable suspicion and probable cause and conducting investigatory stops;

c. Failing to enact and/or maintain and/or execute policies and procedures and/or failing to train employees on wearing body cameras or any other recording devices and activating them correctly, and also consulting them before preparing reports;

d. Failing to institute, execute, or enforce readily available procedures for decreasing the risk of unnecessary and unreasonable force and unlawful arrests during contact with citizens;

e. Failing to institute, execute, or enforce readily available procedures for neutralizing and de-escalating a situation;

f. Failing to enact and/or maintain and/or execute policies and procedures and/or failing to train employees on relaying correct information to dispatched officers;

g. Failing to enact and/or maintain and/or execute policies and procedures and/or failing to train employees on writing accurate police reports without deliberately fabricating evidence;

h. Failing to supervise and/or discipline officers for negligent and/or reckless conduct that results in the violation of citizens' civil rights;

i. Failing to institute, execute, or enforce readily available procedures on writing police reports including procedures and conducing adequate interviews of witnesses and other persons;

42.    In the alternative, upon information and belief, Defendants may have instituted policies or training addressing some or all of the topics listed above, but have, either through negligence or deliberate indifference to citizens' rights, failed to properly oversee, enforce, and/or properly carry out such policies and/or training.

43.    The above-described customs, policies, practices, and/or procedures of Hayward and/or HPD were a moving force and/or a proximate cause of the deprivations of Plaintiff's constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above.

44.    Defendant Hayward is also liable for the violations of Plaintiff's rights by their final policy makers, including Koller, Velasquez, and Does 1-50, as described above. (See, Ninth Circuit Model Civil Jury Instruction 9.6).

45.    Upon information and belief, after receiving Plaintiff's Government Code section 910 claim, Hayward conducted investigations and reviews of this matter concerning the

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

16

wrongful arrest and other liberty deprivations of Plaintiff, and Koller, Velasquez, and Does 1-50 directly and personally participated in such investigations and reviews. The unconstitutional actions and/or omissions of the individually named Defendants and Does 1-50 were approved, tolerated, and/or ratified by policy making officials for Hayward, including, but not limited to, Koller, Velasquez, and Does 1-50. Plaintiff is informed and believes, and thereupon alleges that the details of this incident have been revealed to the authorized policy makers within the Hayward offices and that such policymakers have direct knowledge of the fact that Plaintiff was wrongfully arrested and subjected to other liberty deprivations due to their and their subordinates' deliberate indifference and violations of Plaintiff's rights. Notwithstanding this knowledge, the authorized policymakers within Hayward, approved of the individually named Defendants' and Does 1-50's conduct and decisions in this matter to the extent such individuals were under their supervision and oversight, and have made a deliberate, conscious, and affirmative choice to endorse and ratify such conduct and decisions, and the basis for them, which resulted in the wrongful arrest and other liberty deprivations suffered by Plaintiff. By doing so, the authorized policymakers within Hayward have shown affirmative agreement with the conduct of individual Defendants and other employees/agents under their supervision, and have ratified the unconstitutional acts of these individual Defendants, employees, and agents.

46.    The aforementioned customs, policies, practices, and procedures; the failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and, the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants Koller, Velasquez, C. Suozzo, Humpert, Clayton, Limon, A. Suozzo, Scinto, Agustin, Mckee, Casillas, and Does 1-50 were a moving force and/or a proximate cause of the deprivation of Plaintiff's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth in the paragraphs above.

47.    As a direct and proximate result of the foregoing unconstitutional actions, omissions, customs, policies, practices, and/or procedures of Defendants Hayward, Koller, Velasquez, C. Suozzo, Humpert, Clayton, Limon, A. Suozzo, Scinto, Agustin, Mckee, Casillas,

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

and Does 1-50, or the lack of inadequacy thereof, Plaintiff suffered liberty deprivations, incurred damages, and thus, he is entitled to damages, penalties, costs, and attorney's fees, as set forth above, in ¶ 28, and punitive damages against Defendants Koller, Velasquez, C. Suozzo, Humpert, Clayton, Limon, A. Suozzo, Scinto, Agustin, Mckee, Casillas, and Does 1-50, in their individual capacities. Furthermore, Plaintiff's only means of securing complete and adequate relief is to also seek declaratory and injunctive relief, to offer Plaintiff substantial and complete protection from Defendants' unlawful policies and practices; the remedy at law is inadequate. Plaintiff, thus, seeks both legal damages and equitable remedies in the form of injunctive relief against Defendants Hayward.

### THIRD CAUSE OF ACTION
#### (42 U.S.C. § 1983 – Conspiracy)
**PLAINTIFF AGAINST DEFENDANTS HAYWARD, KOLLER, VELASQUEZ, C. SUOZZO, HUMPERT, CLAYTON, LIMON, A. SUOZZO, SCINTO, AGUSTIN, MCKEE, CASILLAS, AND DOES 1-50**

48.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint, as though fully set forth herein.

49.    Defendants Koller, Velasquez, C. Suozzo, Humpert, Clayton, Limon, A. Suozzo, Scinto, Agustin, Mckee, Casillas, and Does 1-50 agreed to violate Cyrus' constitutional rights by setting into motion the chain of events that led to the officers to intimidate him, attempt to provoke him, follow him, unconstitutionally seize him, unconstitutionally use excessive force against him, and deliberately fabricate evidence to justify their wrongful, deliberately indifferent, negligent, and/or otherwise conduct against him.

50.    To the extent the supervisors of Velasquez, C. Suozzo, Humpert, Clayton, Limon, A. Suozzo, Scinto, Agustin, Mckee, Casillas, and Does 1-50, who supervised them at material and relevant times, knew, should have known, or had reason to know of Defendants' constitutionally violative conduct, as alleged above, or their propensity to engage in such conduct, such supervisors failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise, thus rendering them liable both directly and in their capacity as supervisor. Thus, any supervisors that failed to prevent the unconstitutional acts of said

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

Defendants and failed to properly supervise them are liable directly and in their capacity as a supervisor.

51.   The Defendants named in this cause of action subjected Plaintiff to their unconstitutional actions, coercive and abusive techniques, and wrongful conduct, depriving Plaintiff of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff would be violated by their acts and/or omissions.

52.   As a proximate result of the foregoing wrongful acts, Plaintiff sustained injuries and damages, as set forth above, in ¶ 28. Plaintiff is, therefore, entitled to general and compensatory damages in an amount to be proven at trial.

53.   In committing the acts alleged above, the individually named Defendants and Doe Defendants acted maliciously and/or were guilty of wanton and reckless disregard for the rights, safety, and emotional well-being of Plaintiff, and by reason thereof, Plaintiff is entitled to punitive damages and penalties allowable under 42. U.S.C. § 1983 and other state and federal law against these individual Defendants; no punitive damages are sought directly against Hayward.

54.   Plaintiff is also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

## FOURTH CAUSE OF ACTION
### (42 U.S.C. § 1983 – *Devereaux* Liability)
### PLAINTIFF AGAINST DEFENDANTS HAYWARD, KOLLER, VELASQUEZ, C. SUOZZO, HUMPERT, CLAYTON, LIMON, A. SUOZZO, SCINTO, AGUSTIN, AND DOES 1-50

55.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint, as though fully set forth herein.

56.   Defendants C. Suozzo, Clayton, and Does 1-50 deliberately fabricated evidence by preparing and writing the police report based on a false allegation and containing perjured statements, omissions, and material misrepresentations that was used to prosecute Cyrus, which Defendant Velasquez approved.

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

57.     Defendants C. Suozzo, Clayton, Velasquez, and Does 1-50 knew that Cyrus was innocent, or were deliberately indifferent to Herrera's innocence but conducted a coercive and abusive investigation and/or deliberately fabricated evidence that was used to prosecute Cyrus.

58.     To the extent the supervisors of C. Suozzo, Clayton, Velasquez, and Does 1-50, who supervised them at material and relevant times, knew, should have known, or had reason to know of Defendants' constitutionally violative conduct, as alleged above, or their propensity to engage in such conduct, such supervisors failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise, thus rendering them liable both directly and in their capacity as supervisor. Thus, any supervisors that failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise them are liable directly and in their capacity as a supervisor.

59.     The Defendants named in this cause of action subjected Plaintiff to their deliberate fabrication of evidence, coercive and abusive techniques, and wrongful conduct, depriving Plaintiff of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff would be violated by their acts and/or omissions.

60.     As a proximate result of the foregoing wrongful acts, Plaintiff sustained injuries and damages, as set forth above, in ¶ 28. Plaintiff is, therefore, entitled to general and compensatory damages in an amount to be proven at trial.

61.     In committing the acts alleged above, the individually named Defendants and Doe Defendants acted maliciously and/or were guilty of wanton and reckless disregard for the rights, safety, and emotional well-being of Plaintiff, and by reason thereof, Plaintiff is entitled to punitive damages and penalties allowable under 42. U.S.C. § 1983 and other state and federal law against these individual Defendants; no punitive damages are sought directly against Hayward.

62.     Plaintiff is also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

**FIFTH CAUSE OF ACTION**
**(MALICIOUS PROSECUTION)**
**PLAINTIFF AGAINST DEFENDANTS HAYWARD, KOLLER, VELASQUEZ, C. SUOZZO, HUMPERT, CLAYTON, LIMON, A. SUOZZO, SCINTO, AGUSTIN, AND DOES 1-50**

63.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint, as though fully set forth herein.

64.    Defendants Velasquez, C. Suozzo, Humpert, Clayton, Limon, A. Suozzo, Scinto, Agustin, and Does 1-50 initiated or procured a criminal proceeding against Cyrus. The criminal charges were dropped by the Alameda County District Attorney's Office on or about October 11, 2017. The criminal proceedings were predicated on a false allegation that Cyrus was planning to commit a future robbery with a gun – allegations that were supported by perjured testimony, omissions, and material misrepresentations. Upon information and belief, Plaintiff believes these charges were brought for the purpose of covering up the named Defendant's abuse of authority including: retaliation for Plaintiff asserting his First Amendment rights, excessive force, unlawful arrest, unlawful seizure, and other constitutional deprivations of Plaintiff.

65.    To the extent the supervisors of Velasquez, C. Suozzo, Humpert, Clayton, Limon, A. Suozzo, Scinto, Agustin, and Does 1-50, who supervised them at material and relevant times, knew, should have known, or had reason to know of Defendants' constitutionally violative conduct, as alleged above, or their propensity to engage in such conduct, such supervisors failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise, thus rendering them liable both directly and in their capacity as supervisor. Thus, any supervisors that failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise them are liable directly and in their capacity as a supervisor.

66.    The Defendants named in this cause of action subjected Plaintiff to their wrongful conduct, depriving Plaintiff of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff would be violated by their acts and/or omissions.

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

67. As a proximate result of the foregoing wrongful acts, Plaintiff sustained injuries and damages, as set forth above, in ¶ 28. Plaintiff is, therefore, entitled to general and compensatory damages in an amount to be proven at trial.

68. In committing the acts alleged above, the individually named Defendants and Doe Defendants acted maliciously and/or were guilty of wanton and reckless disregard for the rights, safety, and emotional well-being of Plaintiff, and by reason thereof, Plaintiff is entitled to punitive damages and penalties allowable under 42. U.S.C. § 1983 and other state and federal law against these individual Defendants; no punitive damages are sought directly against Hayward.

69. Plaintiff is also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

**SIXTH CAUSE OF ACTION**
**(CAL. CONST. ART. I, § 13)**
**PLAINTIFF AGAINST DEFENDANTS HAYWARD, KOLLER, VELASQUEZ, C. SUOZZO, HUMPERT, CLAYTON, LIMON, A. SUOZZO, SCINTO, AGUSTIN, MCKEE, CASILLAS, AND DOES 1-50**

70. Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint, as though fully set forth herein.

71. The unreasonable seizure, incarceration, and wrongful setting into motion of the chain of events that led to the seizure of Plaintiff violated Plaintiff's rights under Article 1, § 13 of the California Constitution, thereby entitling Plaintiff to damages for this violation.

72. Defendant Hayward is not sued directly in this cause of action, but is named because it is liable under California Government Code § 815.2 for injuries proximately caused by an act or omission of an employee, committed within the course and scope of the employee's employment.

73. As a proximate result of the foregoing wrongful acts, Plaintiff sustained injuries and damages, as set forth above, in ¶ 28.

74. Plaintiff is, therefore, entitled to general and compensatory damages in an amount to be proven at trial.

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

75.   In committing the acts alleged above, Defendants acted maliciously and/or were guilty of wanton and reckless disregard for the rights, safety, and emotional well-being of Plaintiff, and by reason thereof, Plaintiff is entitled to exemplary and punitive damages against these individual defendants in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**(CALIFORNIA CIVIL CODE § 52.1(b))**
**PLAINTIFF AGAINST DEFENDANTS HAYWARD, KOLLER, VELASQUEZ, C. SUOZZO, HUMPERT, CLAYTON, LIMON, A. SUOZZO, SCINTO, AGUSTIN, MCKEE, CASILLAS, AND DOES 1-50**

76.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint, as though fully set forth herein.

77.   By their acts, omissions, customs, and policies, Defendants Hayward, Koller, Velasquez, C. Suozzo, Humpert, Clayton, Limon, A. Suozzo, Scinto, Agustin, and Does 1-50, acting in concert/conspiracy, as described above, and with threat, intimidation, and/or coercion, violated Plaintiff's rights under California Civil Code § 52.1 and the following clearly established rights under the United States Constitution and California Constitution and law:

a. Plaintiff's rights to be free from unreasonable seizure and his right not to be deprived of liberty or property without due process of law, as secured by the Fourth and Fourteenth Amendments to the United States Constitution and the California Constitution, Article 1, Sections 7 and 13;

b. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1; and,

c. The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

78.   Separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiff's rights, Defendants violated Plaintiff's rights by the following conduct, among other conduct, constituting threat, intimidation, or coercion:

a. Intentionally and/or with deliberate indifference, causing Plaintiff to be subjected to unreasonable seizures, incarceration, and other liberty deprivations.

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

79. Defendant Hayward is not sued directly in this cause of action, but is named because Hayward is vicariously liable pursuant to California Government Code section 815.2.

80. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiff's rights under the United States and California Constitutions and law, Plaintiff sustained injuries and damages, and against each Defendant named in this Cause of Action is entitled to relief as set forth above, in ¶ 28, and punitive damages against all individual Defendants, including all damages and penalties allowed by California Civil Code §§ 52 and 52.1 and California law, three times actual damages, and attorneys' fees.

**EIGTH CAUSE OF ACTION**
**(ASSAULT AND BATTERY)**
**PLAINTIFF AGAINST DEFENDANTS HAYWARD, VELASQUEZ, C. SUOZZO, HUMPERT, CLAYTON, LIMON, A. SUOZZO, SCINTO, AGUSTIN, AND DOES 1-50**

81. Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint, as though fully set forth herein.

82. By the above-described acts and/or omissions and/or failures to supervise and/or failure to institute and execute adequate training and policies on part of Defendants, as alleged herein, Plaintiff was assaulted and battered, thereby entitling Plaintiff to damages pursuant to California law.

83. The aiding and abetting and/or failure to intervene and/or failure to prevent the assault and battery gives rise to liability on the part of other, to-be-identified Doe Defendants.

84. Defendant Hayward is not sued directly in this cause of action, but is named because Hayward is vicariously liable pursuant to California Government Code section 815.2.

85. As a proximate result of the foregoing wrongful acts, Plaintiff sustained injuries and damages, as set forth above, in ¶ 28. Plaintiff is, therefore, entitled to general and compensatory damages in an amount to be proven at trial, as well as punitive damages against Defendants in their individual capacities. No punitive damages are sought against Hayward directly.

**NINTH CAUSE OF ACTION**
**(FALSE ARREST & FALSE IMPRISONMENT)**

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

24

**PLAINTIFF AGAINST DEFENDANTS HAYWARD, VELASQUEZ, C. SUOZZO, HUMPERT, CLAYTON, LIMON, A. SUOZZO, SCINTO, AGUSTIN AND DOES 1-50**

86.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint, as though fully set forth herein.

87.     By the above-described acts and/or omissions and/or failures to supervise and/or failure to institute and execute adequate training and policies on the part of Defendants, as alleged herein, Plaintiff was falsely arrested and falsely imprisoned, thereby entitling Plaintiff to damages pursuant to California law.

88.     The aiding and abetting and/or failure to intervene and/or failure to prevent this arrest gives rise to liability on the part of other, to-be-identified Doe Defendants.

89.     Defendant Hayward is not sued directly in this cause of action, but is named because Hayward is vicariously liable pursuant to California Government Code § 815.2.

90.     As a proximate result of the foregoing wrongful acts, Plaintiff sustained injuries and damages, as set forth above, in ¶ 28. Plaintiff is, therefore, entitled to general and compensatory damages in an amount to be proven at trial, as well as punitive damages against Defendants in their individual capacities. No punitive damages are sought against Hayward directly.

**TENTH CAUSE OF ACTION**
**(NEGLIGENCE)**
**PLAINTIFF AGAINST DEFENDANTS HAYWARD, KOLLER, VELASQUEZ, C. SUOZZO, HUMPERT, CLAYTON, LIMON, A. SUOZZO, SCINTO, AGUSTIN, MCKEE, CASILLAS, AND DOES 1-50**

91.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint, as though fully set forth herein.

92.     At all material times, Defendants owed Plaintiff the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

93.     Defendants are legally responsible for the injuries occasioned to Plaintiff by their want of ordinary care or skill in the performance of their work for Hayward.

94.     At all material times, each Defendant owed Plaintiff the duty to act with reasonable care.

95. These general duties of reasonable care and due care owed to Plaintiff by all Defendants included, but were not limited to, the following specific obligations:

a. To refrain from violating the right to be free from government conduct and/or the exercise of discretion by a government official that is in retaliation and response to the exercise of free speech, as secured by the First and Fourteenth Amendments;

b. To refrain from violating the right to be free from unreasonable searches and/or seizures, as secured by the Fourth and Fourteenth Amendments;

c. To refrain from violating the right to be free from the use of unlawful and/or unreasonable force, as secured by the Fourth and Fourteenth Amendments;

d. The refrain from unlawful threats of force or arrest and intimidation, as secured by the Fourth and Fourteenth Amendments;

e. To refrain from violating the right to be free from outrageous government conduct, as secured by the Fourteenth Amendment;

f. To refrain from violating the right to be free from unreasonable searches and seizures, as secured by the California Constitution, Article 1, section 13;

g. To refrain from violating the right to protection from bodily restrain, harm, or personal insult, as secured by California Civil Code § 43;

h. To refrain from using excessive and/or reasonable force against Plaintiff;

i. To refrain from unreasonably creating and/or escalating a situation where force inevitably is used;

j. To conduct a reasonable investigation before effecting an arrest;

k. To use generally accepted police procedures and tactics that are reasonable and appropriate;

l. To refrain from abusing the authority granted to Defendants by law;

m. To refrain from violating Plaintiff's rights, which are guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

96. Defendant Hayward is not sued directly in this cause of action, but rather are named because they are liable under California Government Code § 815.2 for injury proximately

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

26

caused by an act or omission of an employee, committed within the course and scope of the employees' employment

97.   By the acts and/or omissions alleged above, Defendants acted negligently and breached their duty of due care owed to Plaintiff, which foreseeably resulted in the suffering of damages by Plaintiff.

98.   As a proximate result of Defendants' negligence, Plaintiff sustained injuries and damages, and against each listed Defendant in this Cause of Action is entitled to the relief described above, in ¶ 28, and as otherwise allowed by law. Plaintiff also seeks punitive damages against such individual Defendants in their individual capacities. Plaintiff does not seek punitive damages against Hayward.

**ELEVENTH CAUSE OF ACTION**
**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**
**PLAINTIFF AGAINST DEFENDANTS HAYWARD, KOLLER, VELASQUEZ, C. SUOZZO, HUMPERT, CLAYTON, LIMON, A. SUOZZO, SCINTO, AGUSTIN, MCKEE, CASILLAS, AND DOES 1-50**

99.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint, as though fully set forth herein.

100.   By the above-described acts and/or omissions and/or failures to supervise and/or failure to institute and execute adequate training and policies on the part of Defendants, as alleged herein, Plaintiff was subjected to intentional infliction of emotional distress, thereby entitling Plaintiff to damages pursuant to California law.

101.   The aiding and abetting and/or failure to intervene and/or failure to prevent this arrest gives rise to liability on the part of other, to-be-identified Doe Defendants.

102.   Defendant Hayward is not sued directly in this cause of action, but is named because Hayward is vicariously liable pursuant to California Government Code § 815.2.

103.   As a proximate result of the foregoing wrongful acts, Plaintiff sustained injuries and damages, as set forth above, in ¶ 28. Plaintiff is, therefore, entitled to general and compensatory damages in an amount to be proven at trial, as well as punitive damages against

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

Defendants in their individual capacities. No punitive damages are sought against Hayward directly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

1. Compensatory damages in an amount according to proof, which is fair, just, and reasonable;

2. Punitive damages under 42 U.S.C. § 1983, federal law, and California law, in an amount according to proof and which is fair, just, and reasonable against all Defendants except the public entities and PHS Defendants;

3. For attorney's fees and costs of suit under 42 U.S.C. § 1988;

4. For attorney's fees and cost of suit under California Civil Code §§ 52(b)(3) and 52.1(h);

5. All other damages, penalities, costs, interest, and attorney's fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure § 102.5; California Civil Code §§ 52 et seq. and 52.1; and as otherwise may be allowed by California and/or federal law;

6. For declaratory and injunctive relief against Hayward; and

6. For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Dated: August 20, 2018                    */s/ Andrew Chan Kim*
                                          ANDREW CHAN KIM

                                          Attorney for Plaintiff

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL